**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| v. ) | |
| ) | **Criminal Action No. 2014-00029** |
| **MICHAEL BOYCE,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**Attorneys:**
**Rhonda Williams-Henry, Esq.,**
**Alphonso G. Andrews, Jr., Esq.,**
St. Croix, U.S.V.I.
  *For the Government*

**Yvette D. Ross-Edwards, Esq.,**
St. Croix, U.S.V.I.
  *For the Defendant*

## MEMORANDUM OPINION

**Finch, Senior District Judge**

  THIS MATTER comes before the Court on Defendant Michael Boyce's "Motion *in Limine* to Preclude the Admission of Bureau of Corrections Disciplinary Hearing Records and Statements made by Defendant at Disciplinary Hearing and any Testimony Related Thereto" (Dkt. No. 71), "Motion to Suppress Cell Phone Records" (Dkt. No. 74), and "Motion to Suppress Statements" (Dkt. No. 75). The Government opposes each Motion. (*See* Dkt. Nos. 86, 87, 88). For the reasons that follow, the Court will (1) grant Defendant's "Motion *in Limine* to Preclude the Admission of Bureau of Corrections Disciplinary Hearing Records and Statements made by Defendant at Disciplinary Hearing and any Testimony Related Thereto;" (2) deny Defendant's "Motion to Suppress Cell Phone Records;" and (3) deny Defendant's "Motion to Suppress Statements."

I.     **FACTUAL BACKGROUND AND EVIDENCE**

On April 3, 2014, the Government filed a three-count Indictment charging Defendant Michael Boyce ("Defendant") with two counts of "Possession of Prison Contraband," in violation of 18 U.S.C. § 1791(a)(2), and one count of "Promoting Dangerous Prison Contraband," in violation of 114 V.I.C. § 665(a)(2) and (b).[1] At a consolidated hearing on Defendant's Motion *in Limine* and Motions to Suppress, both parties presented evidence and argument. Hearing Discipline Officer Nisbitt ("Officer Nisbitt") of the Virgin Islands Bureau of Corrections ("BOC") and Special Agent Tracey Gardner ("Agent Gardner") of the Drug Enforcement Administration ("DEA") testified for the Government. Probation Officer Edward Modeste ("Officer Modeste") of the United States Probation Office and Defendant testified for the defense. The facts adduced at the hearing are summarized as follows.

    **A. Search of Defendant's Cell**

On April 4, 2013, BOC officers conducted a random search of a cell occupied by Defendant—a detainee at the Golden Grove Correctional Facility ("Golden Grove").[2] During the search, officers discovered a knife (also known as a "shank") and a cell phone hidden inside a tear in the mattress of the top bunk—the bunk Defendant was observed sleeping on when the officers entered the cell. Cell phones and knives are both prohibited items at Golden Grove and are thus considered contraband. As a result, an Incident Report was prepared charging Defendant with possession of a cell phone and an unauthorized sharp instrument.

Nearly two weeks later, on April 16, 2013, a BOC disciplinary hearing was held to address the charges contained in the April 4, 2013 Incident Report. Defendant appeared before a three-person panel that consisted of Officer Nisbitt and two other BOC officers. At the hearing,

---

[1] The specific items of contraband Defendant is charged with possessing are a knife and a cellular telephone (hereinafter "cell phone").

[2] Defendant shared the cell with another detainee.

2

Officer Nisbitt read Defendant his rights from a document entitled "Discipline Committee Report," which contained a numbered list of "Offender's Right [sic] at Disciplinary Committee Hearing." (Gov't's Ex. 1).[3] Defendant was then presented with a copy of the document and, at the bottom of it, printed and signed his name acknowledging that he had been advised of and understood his rights. (*See id.*).

Following the advisement of rights, Officer Nisbitt read to Defendant the April 4, 2013, Incident Report and, immediately thereafter, asked Defendant whether he admitted or denied the charges made against him. According to Officer Nisbitt, Defendant admitted to the charges.

### B. Search of the Cell Phone

Subsequent to the search of Defendant's cell on April 4, 2013, the BOC requested a warrantless search of the cell phone recovered from the top bunk.[4] The extraction of data from the phone was performed by a Virgin Islands Police Department ("VIPD") officer on April 29, 2013. (*See* Gov't's Ex. 2). On the phone were multiple incoming and outgoing text messages, many of which mentioned the name "Boyce"—the last name of Defendant—in the content. The dates of the text messages ranged from January 30, 2013 to April 4, 2013—the date the phone was seized from Defendant's cell. (*See id.*).[5]

---

[3] The list of rights included: the right to a written copy of the charges at least twenty-four hours prior to the hearing; the right to representation by a full-time member of the prison staff; the right to call witnesses and present evidence; the right to remain silent (and the adverse inference that may be drawn from such silence); the right to be present throughout the hearing; and the right to be advised of the disciplinary committee's decision and the facts in support of that decision. (*See* Gov't's Ex. 1). It is undisputed that Defendant was not advised of the right to an attorney or that any statements may be used against him in a court of law.

[4] The date that the BOC requested the search of the cell phone is unknown.

[5] Agent Gardner testified at the consolidated hearing that the "Phone Examination Report" entered into evidence as Government's Exhibit 2 is only a portion of the content extracted from the cell phone. The date of the last text message contained in the report is March 12, 2013.

### C. Arrest of Defendant

In the early morning hours of April 10, 2014, Defendant was arrested at his apartment in La Grande Princesse for charges stemming from the April 4, 2013 search of his cell at Golden Grove. Several agents were present at the time of the arrest, including Agent Gardner. At the consolidated hearing, Defendant testified that while the agents were knocking on his door to arrest him—between 7:00 a.m. and 8:00 a.m.—he was inside his apartment, smoking marijuana. Agent Gardner recalled that she smelled marijuana emanating from inside of the apartment, but did not see any marijuana in plain view. According to Defendant, he was high at the time of his arrest.[6]

After his arrest, Defendant was transported to the St. Croix High Intensity Drug Trafficking Areas ("HIDTA") office for processing, where he was fingerprinted, photographed, and interviewed by Agent Gardner. Defendant also submitted to a urinalysis administered by the United States Probation Office that tested positive for marijuana.

### 1. Agent Gardner's Account of the Interview[7]

According to Agent Gardner, before the interview, she read Defendant his *Miranda* rights from an "Advice of Rights" form, which contained the standard *Miranda* warnings. (Gov't's Ex. 3). Defendant was then given a copy of the form, which he signed under the header "Waiver of Rights," acknowledging that he had been read his rights; that he understood his rights; and that he was "willing to freely and voluntarily answer questions without a lawyer present." (*Id*.). After Defendant signed the form, Agent Gardner and another individual signed the form as witnesses.[8] Agent Gardner testified that at no time did Defendant indicate that he did not understand his

---

[6] Defendant did not remember how much marijuana he had smoked that morning.

[7] Agent Gardner and Defendant provided differing accounts of what happened during the interview. Therefore, the Court will recount their testimony separately.

[8] The form indicates that both Defendant and Agent Gardner signed it at 8:15 a.m. on April 10, 2014.

rights or the consequences of the waiver. She recalled asking Defendant if he understood his rights and receiving an affirmative acknowledgment.

After the waiver of rights, Agent Gardner informed Defendant of the circumstances surrounding his arrest—i.e., the charges against him. She then asked him questions about the contraband found in his cell at Golden Grove on April 4, 2013. Defendant answered that the cell phone found had been pushed under his cell door immediately before BOC officers entered his cell to conduct a search, and that he had placed the cell phone on top of his bed. Agent Gardner testified that Defendant appeared calm and cooperative throughout his time at the HIDTA office.

### 2. Defendant's Account of the Interview

According to Defendant, prior to reading him his *Miranda* rights, Agent Gardner informed him of the charges against him—specifically mentioning the cell phone and knife found in his cell at Golden Grove. Agent Gardner then showed him "the waiver" he had signed at the BOC disciplinary hearing.[9] Upon seeing the waiver, Defendant testified that he "became paranoid;" was "frightened;" felt like he was in "a nightmare;" and could not think "logically." Although physically present, Defendant recalled that his mind was elsewhere—he stated that he was thinking about the circumstances surrounding the incident at Golden Grove.

Defendant acknowledged that he signed the *Miranda* waiver, but claimed that he was high on marijuana throughout his time at the HIDTA office. He testified that normally marijuana makes him calm and cooperative, but under the circumstances the marijuana made him irrational and paranoid. As a result, he could not think straight and therefore understood from Agent Gardner that if he signed the *Miranda* waiver she would release him. Defendant claimed that he only signed the *Miranda* waiver for that reason, and that reason alone.

---

[9] On cross-examination, Agent Gardner denied showing Defendant administrative records from the BOC disciplinary hearing and stated that she did not bring the records into the interview with Defendant. She did not remember if she had received the records before or after the interview.

## II.    DISCUSSION

### A. Motion *in Limine* to Preclude the Admission of Bureau of Corrections Disciplinary Hearing Records and Statements made by Defendant at Disciplinary Hearing and any Testimony Related Thereto

Defendant seeks to preclude the admission of the BOC disciplinary hearing records, any statements he made at the hearing, and any testimony by BOC officers related to the hearing. Defendant contends that, although he was arguably not entitled to *Miranda* warnings at the disciplinary hearing,[10] his admission of guilt at the hearing is inadmissible at his criminal trial. (*See* Dkt. No. 71 at 2). The Government argues in opposition that *Miranda* warnings were not required at the BOC disciplinary hearing and use of Defendant's statement at his criminal trial is not a violation of his Fifth Amendment right against self-incrimination. (*See* Dkt. No. 86 at 2).[11]

The Fifth Amendment, made applicable to the Virgin Islands by the Revised Organic Act (48 U.S.C. § 1561), provides that "no person . . . shall be compelled *in any criminal case* to be a *witness* against himself." U.S. CONST. amend. V (emphasis added). In *Miranda v. Arizona*, the Supreme Court established the now well-recognized legal principle that under the Fifth Amendment the "prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444 (1966).[12] These procedural safeguards include the well-known *Miranda* warnings, which require that a suspect be:

---

[10] In his Motion, Defendant states that he is not arguing that his constitutional rights were violated at the disciplinary hearing. (*See* Dkt. No. 71 at 2).

[11] At the consolidated hearing, the Government stated that it does not intend to introduce into evidence the BOC disciplinary hearing records. Therefore, the Court will limit its discussion accordingly.

[12] A custodial interrogation has been defined as an "inquiry [] conducted by officers who are aware of the potentially incriminatory nature of the disclosures sought" held in "custodial settings that have inherently coercive pressures that tend to undermine the individual's will to resist and to compel him to speak." *United States v. Morales*, 834 F.2d 35, 38 (2d Cir. 1987) (citing *Miranda*, 384 U.S. at 467; *Garner v. United States*, 424 U.S. 648, 657 (1976)).

> warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Id.* at 479.

The Supreme Court has made clear that "[t]he privilege against self-incrimination guaranteed by the Fifth Amendment is a *fundamental trial right* of criminal defendants." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 264 (1990) (emphasis added; citations omitted). Accordingly, the Fifth Amendment protection against self-incrimination only applies to testimony which may expose an individual to criminal charges. *See Ullmann v. United States*, 350 U.S. 422, 431 (1956) ("The interdiction of the Fifth Amendment operates only where a witness is asked to incriminate himself—in other words, to give testimony which may possibly expose him to a criminal charge.") (citation and internal quotation marks omitted); *see also Hill v. Rozum*, 447 F. App'x 289, 290 (3d Cir. 2011) (finding appellant "was never made to be a witness against himself in violation of the Constitution because his silence was never used against him in a criminal setting"); *Burkholder v. Newton*, 116 F. App'x 358, 361 (3d Cir. 2004) (same).

"Prison disciplinary hearings are not criminal proceedings." *Baxter v. Palmigiano*, 425 U.S. 308, 316 (1976). Therefore, "the full panoply of rights due a defendant in [criminal] proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). However, any statement made by an inmate or detainee at the disciplinary hearing may not be used against him in a subsequent criminal proceeding absent the benefit of *Miranda* warnings. *See United States v. Redfield*, 402 F.2d 454 (4th Cir. 1968) (per curiam) (finding an inmate's incriminating statement made at a prison disciplinary hearing without the benefit of *Miranda* warnings inadmissible at trial); *see also Mathis v. United States*, 391 U.S. 1 (1968) (finding incriminating statements made

7

by a prisoner to an Internal Revenue Service agent during a routine tax investigation inadmissible in a subsequent criminal proceeding because a proper *Miranda* advisement was not given).

In the instant case, Defendant made an incriminating statement at a BOC disciplinary hearing, which the Government now seeks to use against him in a criminal trial for the same offense. Although the advisement of rights read to Defendant at the BOC disciplinary hearing may have been sufficient for purposes of the disciplinary hearing, any statements Defendant made at the hearing—without the benefit of *Miranda* warnings—cannot be used against him at trial. *See, e.g.*, *People v. Stamus*, 902 P.2d 936, 938 (Colo. App. 1995) (holding that "the defendant was entitled to have been advised of the full panoply of rights pursuant to *Miranda* before he could voluntarily waive those rights [at the disciplinary hearing] and make incriminating statements that would be admissible in the subsequent criminal proceedings"); *Grant v. State*, 270 S.E.2d 42, 43 (Ga. Ct. App. 1980) (holding that a plea of guilty entered at a prison disciplinary hearing was inadmissible at a subsequent criminal trial absent a *Miranda* warning at the disciplinary hearing). Accordingly, the Court will grant Defendant's Motion *in Limine* to preclude from trial any statements made by Defendant at the BOC disciplinary hearing.[13]

### B. Motion to Suppress Cell Phone Records

Defendant moves to suppress cell phone records obtained pursuant to a warrantless search of a cell phone recovered from his cell at Golden Grove. Defendant claims that the

---

[13] At the consolidated hearing, the Government argued that *Miranda* warnings are only required in prison interrogations when there is a "change in the surroundings of the prison which results in an added imposition on [] freedom of movement." (Dkt. No. 86 at 3 (quoting *Burkholder*, 116 F. App'x at 361)); *see also United States v. Conley*, 779 F.2d 970, 973 (4th Cir. 1985). However, the Fourth Circuit has noted that in light of the inherently accusatorial nature of prison disciplinary proceedings, any statements elicited at those proceedings would be inadmissible as a result of the custodial interrogation even under the "added imposition on freedom of movement" standard. *See Conley*, 779 F.2d at 972 n.3 (citing *United States v. Redfield*, 402 F.2d 454 (4th Cir. 1968)). Thus, the Court finds that the freedom of movement analysis is inapplicable to the facts of this case.

records were obtained in violation of his privacy rights under the Fourth Amendment. (Dkt. No. 74 at 1). In opposition, the Government argues that because Defendant was a detainee at Golden Grove at the time of the search, he had no expectation of privacy in the cell phone and therefore there was no violation of his Fourth Amendment rights. (Dkt. No. 87 at 3-4).[14]

Under the Fourth Amendment, an individual challenging a search has the burden of establishing (1) "a subjective expectation of privacy in the subject of the search" and (2) that "this expectation of privacy is objectively reasonable." *United States v. Cortez-Dutrieville*, 743 F.3d 881, 884 (3d Cir. 2014) (citing *United States v. Kennedy*, 638 F.3d 159, 163 (3d Cir. 2011)). To determine whether the expectation of privacy is objectively reasonable, a court must consider whether the "expectation of privacy is 'one that society is prepared to recognize as reasonable.'" *United States v. Correa*, 653 F.3d 187, 190 (3d Cir. 2011) (quoting *Bond v. United States*, 529 U.S. 334, 338 (2000)).

It is a well-established principle that a prisoner does not have a reasonable expectation of privacy in his prison cell "and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("[S]ociety is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell."). In holding that the Fourth Amendment proscription against unreasonable searches is inapplicable in a prison cell, the Supreme Court has explained that "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id*. at 527-28. The same reasoning

---

[14] In its Opposition, the Government also argued that Defendant cannot show an expectation of privacy because he was not the subscriber of the cell phone seized. (Dkt. No. 87 at 5). However, the Government did not present evidence on this argument at the consolidated hearing; therefore, it is deemed waived.

applies with equal force to seizures. *Id*. at 528 n.8 ("Prison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests.").

Defendant was a detainee at Golden Grove when BOC officers seized a cell phone from his cell and searched its contents. Defendant was not permitted to possess a cell phone and therefore any phone he brought into Golden Grove was contraband. *See United States v. Blake*, 288 F. App'x 791, 794 (3d Cir. 2008) (stating that "each detainee at Golden Grove receives, and signs a document acknowledging receipt of, the Detainee Handbook. The Handbook states quite clearly that unauthorized items possessed by inmates (including cell phones in particular) are considered contraband").

There is no question that the unauthorized use of a cell phone in a correctional facility "threatens the order, discipline, [and] security" of the institution. 18 U.S.C. § 1791(d)(1)(G). Cell phones can be used to facilitate escapes, direct and/or coordinate crime outside of the prison, and introduce other contraband into the facility. As the Supreme Court has so aptly stated:

> [Prison officials] are under an obligation to take reasonable measures to guarantee the safety of the inmates themselves. They must be ever alert to attempts to introduce drugs and other contraband into the premises which . . . is one of the most perplexing problems of prisons today; they must prevent, so far as possible, the flow of illicit weapons into the prison; [and] they must be vigilant to detect escape plots, in which drugs or weapons may be involved, before the schemes materialize. . . .
>
> . . . [I]t would be literally impossible to accomplish the prison objectives identified above if inmates retained a right of privacy in their cells. Virtually the only place inmates can conceal weapons, drugs, and other contraband is in their cells. Unfettered access to these cells by prison officials, thus, is imperative if drugs and contraband are to be ferreted out . . . .

*Hudson*, 468 U.S. at 526-27. The same rationale applies to contraband cell phones, which, as noted above, can, and have been, used in correctional facilities for dangerous and unlawful purposes.

In light of the lack of expectation of privacy Defendant had in his cell and the lack of any right to contraband, the Court finds that Defendant did not have a reasonable expectation of privacy in the contents of the cell phone recovered from his cell at Golden Grove, including the incoming and outgoing text messages.[15] Accordingly, the Court will deny Defendant's Motion to Suppress Cell Phone Records.[16]

### C. Motion to Suppress Statements

Defendant moves to suppress "any statements" he made to federal agents after signing a *Miranda* waiver. (Dkt. No. 75 at 1). Defendant alleges that he signed a *Miranda* waiver under coercion, intimidation, and a promise that "he would not be charged and would be released upon providing information sought." (*Id*.). Defendant alleges further that he did not knowingly and voluntarily waive his *Miranda* rights because he was under the influence of marijuana—"a mind controlling substance"—at the time of his arrest and interrogation. (*See* Dkt. No. 95 at 1). The Government argues that Defendant knowingly and intelligently waived his Fifth Amendment rights and voluntarily agreed to speak with the agents. (Dkt. No. 88 at 3).

As discussed above, a person subject to custodial interrogation must be informed in clear and unequivocal terms of his rights under *Miranda*. *See* 384 U.S. at 479. A person may, however, "waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." *Id*. at 444; *see also United States v. Pruden*, 398 F.3d 241, 246 (3d Cir. 2005).

---

[15] The Court notes that Defendant argued at the consolidated hearing that some of the text messages extracted from the cell phone cover a period of time when Defendant was not incarcerated. However, the Court finds that this fact has no bearing on the Court's determination that the cell phone is contraband and therefore Defendant does not have a reasonable expectation of privacy in its contents.

[16] This Court recognizes that the Supreme Court recently held that police officers may not, without a warrant, search digital information on a cell phone seized from an individual incident to arrest. *Riley v. California*, 134 S. Ct. 2473 (2014). However, the Supreme Court limited its holding to cell phone searches incident to arrest, stating that "[b]ecause the United States and California agree that these cases involve *searches* incident to arrest, these cases do not implicate the question whether the collection or inspection of aggregated digital information amounts to a search under other circumstances." *Id*. at 2489 n.1. Accordingly, the Court will not expand the scope of *Riley v. California* to warrantless searches of cell phones confiscated as prison contraband.

"Once a defendant challenges the admissibility of any statements made while in custody, the government must prove [by a preponderance of the evidence] that the defendant was advised of and understood [his] *Miranda* rights and that he . . . validly waived those rights." *United States v. Briscoe*, 69 F. Supp. 2d 738, 741, 41 V.I. 446 (D.V.I. 1999), *aff'd in part, rev'd in part on other grounds*, 234 F.3d 1266 (3d Cir. 2000); *see also Colorado v. Connelly*, 479 U.S. 157, 168-69 (1986).

To prove a valid waiver, the Government has the burden of establishing that the waiver was "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id*. (quoting *Colorado v. Spring*, 479 U.S. 564, 572 (1987)); *see also United States v. Whiteford*, 676 F.3d 348, 362 (3d Cir. 2012). The Supreme Court has characterized this as a "heavy burden." *Miranda*, 384 U.S. at 475; *see also North Carolina v. Butler*, 441 U.S. 369, 373 (1979) (stating that "the prosecution's burden is great").

To determine whether *Miranda* rights have been voluntarily, knowingly, and intelligently waived, courts must "consider the totality of circumstances surrounding [the defendant's] statement." *Briscoe*, 69 F. Supp. 2d at 741 (quoting *United States v. Tyler*, 164 F.3d 150, 158 (3d Cir. 1998)). Specifically, courts consider "the background, experience, and conduct of the [defendant], as well as any indicia of coercion." *Id*. (citing *Oregon v. Bradshaw*, 462 U.S. 1039, 1046 (1983)). Examples of "traditional" indicia of coercion are the duration and conditions of detention, the attitude of the interrogators, defendant's physical and mental state, and other pressures affecting his powers of resistance and self-control. *Id*. at 741 n.1 (citing *Spring*, 479 U.S. at 574).

During the hearing, Defendant testified on his own behalf and presented evidence through Officer Modeste of the United States Probation Office. The Government presented evidence through Agent Gardner and entered as an exhibit the written *Miranda* waiver executed by Defendant on the day of his arrest. The testimony at the consolidated hearing conflicted significantly on the points most relevant to whether Defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights. Thus, the Court is required to make credibility determinations. *See United States v. Richardson*, 501 F. Supp. 2d 724, 734 (W.D. Pa. 2007) ("[A]t a hearing on a motion to suppress, the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all maters to be determined by the trial judge.") (citations and internal quotation marks omitted).

Defendant claims that the waiver of his *Miranda* rights was involuntary because at the time they were obtained, he was under the influence of marijuana. "While courts have recognized the influence of drugs as one factor in determining voluntariness, involuntariness may not be inferred merely because of drug usage or ingestion. Rather, such usage must have had the effect of overcoming [the defendant's] free will." *Ledesma v. Gov't of V.I.*, 159 F. Supp. 2d 863, 867 (D.V.I. 2001) (citing *Connelly*, 479 U.S. at 164 (holding that while defendant's mental condition may be a significant factor in the "voluntariness calculus . . . this fact does not justify the conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional voluntariness")).

At the consolidated hearing, Defendant presented evidence to establish that immediately prior to his arrest he was smoking marijuana and that on the date of his arrest his urine tested positive for marijuana after a urinalysis was performed by the United States Probation Office. The mere fact that Defendant had used marijuana prior to his arrest and that there was marijuana

in his urine does not establish that he was impaired at the time he waived his *Miranda* rights. *See United States v. Burson*, 531 F.3d 1254, 1258 (10th Cir. 2008) (finding that "[t]he mere fact of drug or alcohol use will not suffice" to overcome "evidence showing [that] the defendant was sufficiently in touch with reality [such] that he knew his rights and the consequences of abandoning them").[17] Indeed, there was evidence to the contrary showing that Defendant understood the nature of his *Miranda* rights and the consequences of waiving them.

The Court credits the testimony of Agent Gardner that Defendant was read his *Miranda* rights; signed a form that waived those rights; and answered in the affirmative when asked if he understood his rights. The Court also credits the testimony of Agent Gardner that Defendant was calm and cooperative during her interview with him and that Defendant gave fully responsive answers to her questions, including specific details regarding the cell phone that was recovered from his cell at Golden Grove. The Third Circuit has held that such facts are sufficient to find a voluntary, knowing, and intelligent waiver.

In *United States v. Andrews*, the Third Circuit affirmed the district court's denial of the defendant's motion to suppress after finding that there was no evidence that "[the defendant's] will was overborne because he had been smoking marijuana or ingesting Xanax more than thirteen hours prior to his confession." 231 F. App'x 174, 177 (3d Cir. 2007). In reaching this conclusion, the Third Circuit noted the detective's testimony that the defendant "did not exhibit any symptoms of someone who was under the influence of marijuana and Xanax." Rather, the detective found that the defendant was "alert and lucid . . . spoke clearly, answered questions directly, and provided specific details regarding his participation in the armed robberies." *Id*.

The Court is aware that the defendant in *Andrews* was not interviewed until thirteen hours after he had smoked marijuana and ingested Xanax. Whereas, in this case, Defendant contends

---

[17] The Court recognizes that Tenth Circuit precedent is not controlling authority in this jurisdiction; however, the Court finds this decision of the Tenth Circuit persuasive.

that he smoked marijuana immediately prior to his arrest and interview. However, even if Defendant were under the influence of marijuana at the time of his interview, there was no evidence presented concerning how much Defendant had smoked the morning of his arrest. Nor was there evidence that the amount he smoked was unusual for him.[18] Considering all of these facts, the Court finds that Defendant has failed to establish that his use of marijuana prior to his arrest was sufficient to—and did, in fact—impair his ability to make a conscious waiver of his *Miranda* rights.

Defendant also claims that he did not validly waive his *Miranda* rights because Agent Gardner coerced him into signing the *Miranda* waiver by promising that she would release him if he answered her questions. The Government did not present testimony or evidence to rebut the testimony of Defendant on this point. Thus, the resolution of this issue turns on the credibility of Defendant. *See United States v. Davis*, 2014 U.S. Dist. LEXIS 48843, *9, [WL], at *3 (W.D. Pa. Apr. 9, 2014) ("At a suppression hearing, as the finder of fact, the Court determines the credibility of witnesses and may accept or reject any or all of a witness's testimony.").

At the consolidated hearing, Defendant made a number of inconsistent statements regarding the actions of Agent Gardner during the interview. For example, on direct examination, Defendant testified that before Agent Gardner read *Miranda* rights to him, she informed him of the charges against him. Then, on cross-examination, Defendant, after stating that marijuana affects his memory, testified that he did not remember Agent Gardner reading *Miranda* rights to him. Overall, Defendant's testimony reflected a very selective memory of the events that happened the day of his arrest. Defendant's selective memory and inconsistent testimony on salient points demonstrates his lack of credibility. Therefore, the Court does not

---

[18] Defendant gave testimony about the effect of marijuana on him. He stated that marijuana normally makes him calm. Based on this testimony, the Court finds that this was not the first time that Defendant had smoked marijuana.

credit the testimony of Defendant that Agent Gardner promised to release him if he answered her questions.[19]

Upon consideration of the totality of the circumstances, the Court finds that the Government has met its burden of proving by a preponderance of the evidence that Defendant made a voluntary, knowing, and intelligent waiver of his *Miranda* rights and that Defendant's *Miranda* waiver was the product of his own free will and not from any influence of marijuana or the use of deceptive or coercive tactics. Accordingly, the Court will deny Defendant's Motion to Suppress Statements.

### III.   CONCLUSION

For the foregoing reasons, the Court finds that any statement Defendant made at the BOC disciplinary hearing—without the benefit of *Miranda* warnings—is inadmissible at trial. The Court also finds that Defendant did not have a reasonable expectation of privacy in the contents of the cell phone recovered from his cell at Golden Grove. Accordingly, the Court will not suppress the cell phone records obtained pursuant to a warrantless search of the cell phone. Additionally, the Court finds that under the totality of the circumstances Defendant made a voluntary, knowing, and intelligent waiver of his *Miranda* rights. Therefore, the Court will not suppress the statements Defendant made to Agent Gardner at the HIDTA office.

An appropriate Order accompanies this Memorandum Opinion.

Date:  February 26, 2015                                           _____/s/_____
                                                                                   RAYMOND L. FINCH
                                                                                   Senior District Judge

---

[19] Although the Court has found that the testimony of Defendant is incredible on this point, the Court notes that the fact "[t]hat a law enforcement officer promises something to a person suspected of a crime in exchange for the person's speaking about the crime does not automatically render inadmissible any statement obtained as a result of that promise." *United States v. Walton*, 10 F.3d 1024, 1028 (3d Cir. 1993). The relevant inquiry is whether under the totality of the circumstances "the defendant's will was overborne when he confessed." *Id*. (citing *Miller v. Fenton*, 796 F.2d 598, 604 (3d Cir. 1986)). As stated below, the Court finds that under the totality of the circumstances Defendant made a voluntary, knowing, and intelligent waiver of his *Miranda* rights of his own free will.